JOHN D. BRUNE *v.* STATE OF INDIANA.

[No. 1-875A137. Filed February 26, 1976.]

*John F. Strain,* of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant John H. Brune (Defendant) appeals from a conviction for possession of a controlled substance, to-wit: marijuana. He raises five alleged errors for our review:

1. The trial court erred in failing to suppress certain evidence seized in a warrantless search.
2. The trial court erred in not granting defendant's motion for a mistrial because of an alleged "evidentiary harpoon."
3. The trial court erred in failing to sustain defendant's objection to allegedly inflammatory statements made by a State's witness.
4. The trial court erred in failing to sustain defendant's objection to the introduction of evidence as to the weight of the substance possessed by the defendant.
5. The verdict of the jury was contrary to law and not sustained by the weight of the evidence.

## FACTS

Defendant was traveling east on Interstate 70 in Wayne County, Indiana, when Officer Donald Bates stopped the car for speeding. Defendant's car was pulling a small enclosed rental trailer. As the officer approached the car and trailer from the rear, he noticed that a familiar green leafy substance was sticking out from under the locked back door of the trailer. When he reached the driver's side of the car he spoke with the Defendant, and at the same time detected a strong odor of burning marijuana coming from the car.

The officer called for assistance, determined the green leafy substance to be marijuana, and placed the Defendant under arrest for possession of a controlled substance.

The car and trailer were then taken to S & S Towing in Richmond where the lock on the trailer was sawed off. The subsequent warrantless search of the car and trailer was undertaken without Defendant's permission. (Defendant did not have a key to the locked trailer.) The trailer contained 570 pounds of marijuana. Additional small amounts of marijuana were found in the ash tray, under the dash, and in the trunk of the car. Samples of each were introduced at the trial of the Defendant, and he was eventually convicted by the jury of the charge.

# I.

Defendant first contends that the warrantless search and seizure of the car and trailer was illegal, since at the time of the search, both vehicles were under the control of the police department. He contends that there was no exigent circumstance that would justify the warrantless search of the vehicles, and thus a warrant was required under the Fourth and Fourteenth Amendments to the United States Constitution.

We first note that it is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States* v. *Robinowitz* (1951), 339 U.S. 56, 66, 70 S.Ct. 430, 435; *Cooper* v. *State of California* (1967), 386 U.S. 58 ,62, 87 S.Ct. 788, 791. The State argues several different theories to justify the subsequent search for, and seizure of, the contraband in both the trailer and the car, but we believe that *Cooper* v. *State of California, supra,* is so directly in point that we need not pursue these other arguments any further.

In *Cooper,* the defendant was arrested for a narcotics violation, and his car was impounded pursuant to the state forfeiture law. A week later, the police searched the car without a warrant. The defendant was subsequently convicted on the basis of evidence found in the car. The United States Supreme Court held that the search of the car was reasonable, whether the State had "legal title" to it or not, since the car was being held pursuant to state forfeiture proceedings and the search was thus closely related to the reason the defendant was arrested, the reason the car had been impounded, and the reason the car was being retained.

IC 1971, 35-24.1-5-5 (Burns Code Ed.) provides in relevant part as follows:

"Forfeitures.— (a) The following are subject to forfeiture:
(1)  all controlled substances which are or have been manu-
     factured, distributed, dispensed, acquired or possessed
     in violation of this article, or with respect to which
     there has been any act by any person in violation of
     this article;

 *   *   *

(4)  all conveyances, including aircraft, vehicles or vessels,
     which are used, or intended for use, to transport, or
     in any manner to facilitate the transportation, for the
     purpose of sale or receipt, possession or concealment of
     property described in paragraph (1) . . .

 *   *   *

(b)  Property subject to forfeiture under this article may
     be seized by any enforcement officer upon process issued
     by any state court of record having jurisdiction over
     the property. Seizure without process may be made if:
     (1)  the seizure is incident to an arrest. . . .

 *   *   *"

In the case at bar, Defendant was properly stopped for
a speeding violation. Upon approaching the vehicle the officer
discovered contraband in plain view sticking out
from under the locked door of the trailer, and noticed
the strong smell of burning marijuana as he ap-
proached the driver of the car. There was clearly probable
cause to arrest the Defendant for possession of a controlled
substance at that point. The officer had a right under our
forfeiture statute to seize both the marijuana and the vehicles
transporting it. For purposes of determining the legality of
the search, it is irrelevant whether the State ever actually
obtained "legal title" to the vehicles in a subsequent proceed-
ing. *Cooper* v. *State of California, supra.* The search was
reasonable in this case since the search was closely related
to the reason the Defendant was arrested and the reason
the car was being held. We find no error in this procedure,
and the evidence seized was properly admissible at Defend-
ant's trial.

The Defendant next contends that he was the victim of an
evidential harpoon, in that three prejudicial statements were

made at trial by the arresting officer. He contends that the court's admonitions to the jury were not sufficient to overcome the prejudicial effect of the witness's statements.

The first instance occurred when the officer was asked if he noticed anything unusual about the Defendant's car. The officer responded that "the driver appeared to be under the influence of . . ." Defendant's immediate objection was sustained. Later, in the same testimony, when asked how the Defendant had replied to a question, the officer said "he gave me an untrue answer." After objection, the court gave a lengthy and thorough admonition to counsel, the witness, and the jury. The only other testimony complained of was the statement that the next day there were "juices" running out on the floor of the trailer. However, Defendant fails to show how this was prejudicial.

In *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312, the Supreme Court set out thirteen factors that have been considered in determining whether a mistrial should be declared:

"1. The effect of constitutional provisions, statutes or rules relating to harmless error.

"2. The degree of materiality of the testimony.

"3. Other evidence of guilt.

"4. Other evidence tending to prove the same fact.

"5. Other evidence that may cure the improper testimony.

"6. Possible waiver by the injured party.

"7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.

"8. The penalty assessed.

"9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.

"10. The existence of other errors.

"11. Whether the question of guilt is close or clear and compelling.

"12. The standing and experience of the person giving the objectional testimony.

"13. Whether or not the objectionable testimony or misconduct was repeated."

The granting of a mistrial rests largely within the sound discretion of the trial judge, and will be reversed only for an abuse of that discretion. *White* v. *State, supra.*

In considering the applicability of these thirteen standards, we note that the questionable remarks were not material to the guilt of the Defendant; that the other evidence of guilt was overwhelming; that the statements appeared to be spontaneously volunteered by the witness rather than the result of some deliberate action by the prosecutor; that there were no other errors in the record; that the question of guilt was clear and compelling and not a close question; and that the three instances were so different that it cannot be said that the objectionable testimony was repeated. The only countervailing consideration is the fact that the witness was a police officer of considerable experience, and presumably should have been aware of the possible prejudicial impact of his statements. However, we believe that the statements were mere slips of the tongue, and were not calculated, either by the witness or the prosecutor, to improperly influence the jury, as the court found to be the case in *White* v. *State.*

Finally, we note that the trial judge was keenly aware of his responsibility, and carefully weighed the prejudicial impact of the statements. He gave strong and extensive admonitions to the jury, and in general was careful to give Defendant a fair trial. We find no abuse of discretion in his refusal to grant a mistrial.

## III.

Defendant's next contention is that the trial court erred in failing to sustain Defendant's objection to allegedly inflam-

matory statements made by a State's witness. Defendant has failed to set out those statements that are allegedly inflammatory, and thus has waived any error that may have occurred. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Further, our examination of the record reveals no prejudicially inflammatory statements.

## IV.

Defendant's next challenge is to the propriety of the admission of certain evidence as to the total weight of marijuana that was contained in the trailer. The State's witnesses explained how the trailer was taken to the State's scales, weighed with the marijuana still inside, emptied of the marijuana, and weighed again. Having determined in this manner that there was 570 pounds of the substance contained in the trailer, the police extracted a sample for further testing, and then destroyed the remaining pile. When a State's witness later testified that 570 pounds of marijuana had been seized, the Defendant objected, claiming there was no showing as to the accuracy of the State scales used to weigh the material.

Defendant's claimed error is clearly frivolous. The weight of the material had already been established and testified to without objection. Error, if any, in the testimony as to the exact weight of the material was harmless.

## V.

Finally, Defendant challenges the sufficiency of the evidence. When reviewing the sufficiency of the evidence, this court cannot weigh the evidence nor determine the credibility of witnesses, but may look only to the evidence and reasonable inferences therefrom most favorable to the State. A conviction will be affirmed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty

beyond a reasonable doubt. *Walker* v. *State* (1973), 155 Ind. App. 404, 293 N.E.2d 35; *Shank* v. *State* (1972), 154 Ind. App. 147, 289 N.E.2d 315.

The only contention that Defendant makes in this regard presupposes that we would accept his argument in Part I above. Since we have held that the evidence seized was properly admitted at his trial, there can be no contention of insufficiency in this regard. Nor do we find that the State failed to prove any other element of the crime charged. The evidence is clearly sufficient to uphold the trial court's verdict, and was thus not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 342 N.E.2d 637.