## COOPER *v.* CALIFORNIA.

No. 103.   Argued December 8, 1966.—Decided February 20, 1967.

*Michael Traynor,* by appointment of the Court, 384 U. S. 948, argued the cause and filed briefs for petitioner.

*Albert W. Harris, Jr.,* Assistant Attorney General of California, argued the cause for respondent. With him on the brief were *Thomas C. Lynch,* Attorney General, and *Edward P. O'Brien,* Deputy Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was convicted in a California state court of selling heroin to a police informer. The conviction rested in part on the introduction in evidence of a small piece of a brown paper sack seized by police without a warrant from the glove compartment of an automobile which police, upon petitioner's arrest, had impounded and were holding in a garage. The search occurred a week after the arrest of petitioner. Petitioner appealed his convic-

tion to the California District Court of Appeal which, considering itself bound by our holding and opinion in *Preston* v. *United States,* 376 U. S. 364, held that the search and seizure violated the Fourth Amendment's ban of unreasonable searches and seizures. That court went on, however, to determine that this was harmless error under Art. VI, § 4½, of California's Constitution which provides that judgments should not be set aside or reversed unless the court is of the opinion that the error "resulted in a miscarriage of justice." 234 Cal. App. 2d 587, 44 Cal. Rptr. 483. The California Supreme Court declined to hear the case. We granted certiorari along with *Chapman* v. *California, ante,* p. 18, to consider whether the California harmless-error constitutional provision could be used in this way to ignore the alleged federal constitutional error. 384 U. S. 904. We have today passed upon the question in *Chapman,* but do not reach it in this case because we are satisfied that the lower court erroneously decided that our *Preston* case required that this search be held an unreasonable one within the meaning of the Fourth Amendment.

We made it clear in *Preston* that whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case and pointed out, in particular, that searches of cars that are constantly movable may make the search of a car without a warrant a reasonable one although the result might be the opposite in a search of a home, a store, or other fixed piece of property. 376 U. S., at 366–367. In *Preston* the search was sought to be justified primarily on the ground that it was incidental to and part of a lawful arrest. There we said that "[o]nce an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." *Id.,* at 367. In the *Preston* case, it was alternatively argued that the warrantless

search, after the arrest was over and while Preston's car was being held for him by the police, was justified because the officers had probable cause to believe the car was stolen. But the police arrested Preston for vagrancy, not theft, and no claim was made that the police had authority to hold his car on that charge. The search was therefore to be treated as though his car was in his own or his agent's possession, safe from intrusions by the police or anyone else. The situation involving petitioner's car is quite different.

Here, California's Attorney General concedes that the search was not incident to an arrest. It is argued, however, that the search was reasonable on other grounds. Section 11611 of the California Health & Safety Code provides that any officer making an arrest for a narcotics violation shall seize and deliver to the State Division of Narcotic Enforcement any vehicle used to store, conceal, transport, sell or facilitate the possession of narcotics, such vehicle "to be *held as evidence* until a forfeiture has been declared or a release ordered." [1] (Emphasis supplied.) Petitioner's vehicle, which evidence showed had been used to carry on his narcotics possession and transportation, was impounded by the officers and their duty required that it be kept "as evidence" until forfeiture proceedings were carried to a conclusion. The lower court concluded, as a matter of state law, that the state forfeiture statute did not by "clear and express language"

---

[1] Cal. Health & Safety Code § 11610 provides:
"The interest of any registered owner of a vehicle used to unlawfully transport or facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited, or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof or which is used to facilitate the unlawful possession of any narcotic by an occupant thereof, shall be forfeited to the State."

authorize the officers to search petitioner's car.   234 Cal. App. 2d, at 598, 44 Cal. Rptr., at 491.   But the question here is not whether the search was authorized by state law.   The question is rather whether the search was reasonable under the Fourth Amendment.   Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one.   While it is true, as the lower court said, that "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it," *ibid.*, the reason for and nature of the custody may constitutionally justify the search. Preston was arrested for vagrancy.   An arresting officer took his car to the station rather than just leaving it on the street.   It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it.   The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him.   So was their subsequent search of the car.   This case is not *Preston,* nor is it controlled by it.   Here the officers seized petitioner's car because they were required to do so by state law.   They seized it because of the crime for which they arrested petitioner.   They seized it to impound it and they had to keep it until forfeiture proceedings were concluded.   Their subsequent search of the car—whether the State had "legal title" to it or not— was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained.   The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized.   It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own

protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." *United States* v. *Rabinowitz,* 339 U. S. 56, 66. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding.

Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so. And when such state standards alone have been violated, the State is free, without review by us, to apply its own state harmless-error rule to such errors of state law. There being no federal constitutional error here, there is no need for us to determine whether the lower court properly applied its state harmless-error rule.[2]                                            *Affirmed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BRENNAN and MR. JUSTICE FORTAS concur, dissenting.

When petitioner was arrested, his auto was seized by officers, pursuant to the California Health & Safety Code, § 11611. That section authorizes a state officer making an arrest for violation of the narcotics laws to seize a "vehicle used to unlawfully transport any narcotic or to facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept," and directs the officer to deliver the vehicle to the Division of Narcotic Enforcement "to be held as evidence until

---

[2] Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit.

a forfeiture has been declared or a release ordered."
About a week after petitioner's arrest, a state agent
searched the car, which was stored at a towing service,
and discovered a piece of brown paper which appeared to
have been torn from a grocery bag. This piece of paper
was introduced at the trial, along with two bundles of
heroin, which petitioner allegedly sold an informer, and
the brown paper in which the heroin had been wrapped.[1]
Petitioner was indicted and convicted of selling heroin.
A judgment of forfeiture of petitioner's car was entered
the day after the termination of his trial.

The California District Court of Appeal held that the
piece of paper bag was the product of an illegal search,
234 Cal. App. 2d 587, 44 Cal. Rptr. 483. First, the state
court held that the State could not rely on the subsequent
forfeiture to justify the search. It realistically noted that
the State's title could not relate back to the time of the
seizure until after a judicial declaration of forfeiture.
Since the forfeiture judgment was not entered until after
petitioner's trial, the State could not rely on it to justify
the search. *Id.,* at 596–597, 44 Cal. Rptr., at 489–490.
Second, the court held that although the automobile was
in the lawful custody of the officers at the time of the
search, § 11611 of the Health & Safety Code did not
authorize the officers to search the car. *Id.,* at 597, 44
Cal. Rptr., at 490. Since the search was not pursuant to
a warrant, and since it was not incidental to petitioner's
arrest, it was illegal.

Hence the fact that the car was being held "as evi-
dence" did not as a matter of state law give the officers
more dominion over it than the officers in *Preston* v.

---

[1] About four months after the arrest, another agent searched the
car and found a marijuana seed, which was introduced at trial.
There is no objection to this evidence since there was no jury and
the trial judge indicated that the marijuana seed was irrelevant to
the charge for which petitioner was being tried.

*United States,* 376 U. S. 364, had over the car in their custody.

In *Preston,* petitioner and others were arrested for vagrancy after they failed to give an acceptable explanation of their presence in a parked car late at night. They were taken to the police station, and the car was taken first to the station and then to a garage. After the men were booked, police officers went to the garage, searched the car without a warrant, and found evidence incriminating petitioner and the others of conspiracy to rob a federally insured bank.

In the instant case petitioner was arrested, his car taken to a garage and searched a week after his arrest, likewise without a warrant. As in *Preston,* the search cannot be justified as incidental to a lawful arrest. Nor can this case be distinguished from *Preston* on the ground that one car was lawfully in police custody and the other not. In *Preston,* the fact that the car was in lawful police custody did not legalize the search without a warrant. Since the California court held that the Health & Safety Code did not authorize a search of a car impounded under its provisions, the case is on all fours with *Preston* so far as police custody is concerned. If custody of the car is relevant at all, it militates against the reasonableness of the search. As the Court said in *Preston:* "[S]ince the men were under arrest at the police station and the car was in police custody at a garage, [there was no] danger that the car would be moved out of the locality or jurisdiction." 376 U. S., at 368. Moreover, the claim that the search was not illegal because the car had been forfeited to the State is foreclosed by the state court's holding that, under the circumstances, the forfeiture could not relate back to the date of the seizure. The state court's interpretation of its own statute will not be upset by this Court. *Guaranty Trust Co.* v. *Blodgett,* 287 U. S. 509.

To repeat, this case is on all fours with *Preston*. For in each the search was of a car "validly" held by officers, to use the Court's expression. *Preston*, of course, was a federal case, while this is a state case. But the Fourth Amendment with all its sanctions applies to the States as well as to the Federal Government. *Mapp* v. *Ohio*, 367 U. S. 643.

I see only two ways to explain the Court's opinion. One is that it overrules *Preston sub silentio*. There are those who do not like *Preston*. I think, however, it states a healthy rule, protecting the zone of privacy of the individual as prescribed by the Fourth Amendment. These days police often take possession of cars, towing them away when improperly parked. Those cars are "validly" held by the police. Yet if they can be searched without a warrant, the precincts of the individual are invaded and the barriers to privacy breached. Unless the search is incident to an arrest, I would insist that the police obtain a warrant to search a man's car just as they must do when they search his home.

If the present decision does not overrule *Preston*, it can perhaps be rationalized on one other ground. There is the view that when the Bill of Rights is applied to the States by reason of the Fourteenth Amendment, a watered-down version is used. In that view "due process" qualifies all provisions of the Bill of Rights. Today's decision is perhaps explicable in those terms. But I also reject that view. "Unreasonable searches and seizures" as used in the Fourth Amendment, "self-incrimination" as used with reference to the Fifth, "freedom of speech" as used in the First, and the like, mean the same in a state as in a federal case.[2]

---

[2] That view was expressly approved by the Court in *Malloy* v. *Hogan*, 378 U. S. 1, 10–11.