**UNITED STATES of America**

v.

**Nicolas VIDAL, Defendant.**

**No. 85 Cr. 631 (CBM).**

United States District Court,
S.D. New York.

Feb. 10, 1986.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y. by Adam S. Hoffinger, Asst. U.S. Atty., New York City, for Government.

David H. Weiss, New York City, for defendant.

OPINION

MOTLEY, Chief Judge.

Defendant Nicolas Vidal, charged with conspiracy to distribute heroin, and distribution of heroin, has moved to suppress certain evidence found in his car after he was arrested by federal agents. After a hearing on this issue, at which the federal agent involved in this contested car search testified, and for the reasons that follow, the court denies defendant's suppression motion.

*Facts*

Defendant was arrested at an apartment building in the Washington Heights section of Manhattan where Jose Reyes, a government informant in this case, lived. Mr. Reyes had just been arrested the day earlier for selling drugs to a Drug Enforcement Administration undercover agent. Reyes was on probation at the time. Several hours after his arrest, Reyes agreed to cooperate with the federal authorities. De-

fendant Vidal, he told the authorities, was his supplier, and would be coming by his home the next morning, as was his custom, to pick up payment for the drugs. Reyes advised that he and Vidal communicated with each other by means of telephone and an electronic "beeper" system.

Having agreed to arrange a meeting with Vidal, Reyes was escorted by federal agents back to Reyes' apartment in Washington Heights. There, Reyes punched some numbers into his telephone and informed the agents that he had beeped Vidal, and that Vidal would know to call back on Reyes' home telephone number. Minutes after this, Reyes' phone rang. In the course of a brief conversation in Spanish, which was taped with Reyes' permission, a meeting at the apartment was arranged for one hour later. Reyes told the agents that Vidal, whose person and whose car he described, would be dropping by at that time to pick up the money he was owed.

About an hour later, with agents stationed outside in front of Reyes' apartment building, a man fitting Vidal's description came to Reyes' address and entered the apartment complex. The agents entered the building after him, some ways behind, and made their way towards Reyes' apartment. Upon taking a right turn in the hallway of the first floor towards the apartment, they saw Vidal coming back from Reyes' apartment door towards them. At this point, an agent approached Vidal. Vidal, in turn, quickly threw down onto the floor a scrap of paper on which were scribbled some figures. The agent then arrested and searched defendant, and discovered, among other things, a beeper and some car keys. Vidal denied owning a car.

The agents then located a vehicle two and a half blocks away fitting the description that Reyes had previously given for Vidal's car. The agents opened the car door with the keys they had found on defendant and immediately searched the car. The search revealed no traces of drugs, but a paper bag filled with over $5,000 in cash, the evidence at issue in this suppression motion, was found under the front passenger seat. The car was then impounded for safekeeping.

## Discussion

The Government contends that its agent's warrantless search of defendant's car was justified under two separate theories. First, argues the Government, the search was a valid inventory search and thus no warrant was required. Second, since the search was made pursuant to seizure of a vehicle subject to statutory forfeiture, it could also be done without a warrant.

■■■ Upon consideration of the federal agent's affidavit on this motion and his testimony regarding the search at issue here, the court concludes that the search of defendant's parked car was not a valid inventory search such as would suspend the Fourth Amendment warrant requirement. While warrantless inventory searches of vehicles are constitutionally permissible, to qualify as such, a search must be done according to standard and routine police procedures in a situation where it is reasonable for the authorities to have secured the car. See *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski*, 413 U.S. 433, 443, 93 S.Ct. 2523, 2529, 37 L.Ed.2d 706 (1973); *United States v. Smith*, 621 F.2d 483, 488–489 (2d Cir.1980) *cert. denied* 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). Warrantless "inventory" searches are not permissible, however, simply for the purpose of securing incriminating evidence. *United States v. Capra*, 501 F.2d 267, 279–280 (2d Cir.1974) (inventory search rationale for warrantless search of car suspected of and subsequently found to be containing heroin, properly rejected where "though the police may have 'exercised a form of custody or control' over the car, they clearly conducted the search for the purpose of securing incriminating evidence.").

■■■ The court finds incredible in this case the government agent's testimony that defendant's car was seized and searched for the purpose of safekeeping the car and defendant's personal belongings contained therein. To acceed to the Government's inventory search theory in

this context would be a tacit approval of the proposition that any time a car owner is arrested, the Government may automatically comb the streets for the vehicle, secure and impound it, and also search its interior without a warrant, ostensibly to save the arrestee from the embarassment of parking violations, or a broken windshield or stolen tape deck.

Defendant's suppression motion is denied, however, on the basis of the Government's second argument. Under applicable statutes specifically concerning vehicles used in drug transactions, and under Second Circuit case law interpreting these statutes, it seems clear that a warrantless search of defendant's vehicle was permissible. According to 21 U.S.C. Section 881(a)(4), vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of [controlled substances]" shall be subject to forfeiture. See also 49 U.S.C. Sections 781(a)(3), 782 (same).

■ The fact that a vehicle may be subject to forfeiture pursuant to federal statute does not, by itself, of course, render permissible a warrantless search of the vehicle. Under certain circumstances, however, warrantless searches of vehicles covered by these forfeiture statutes have been upheld by the courts. In particular, the Second Circuit has repeatedly approved warrantless searches of vehicles in situations where the vehicle was subject to seizure or forfeiture under 21 U.S.C. Section 881 or 49 U.S.C. Section 781 et seq., and where there was probable cause to believe that the car was or had been used for carrying contraband. See *United States v. Capra*, 501 F.2d 267, 280 (2d Cir.1974); *United States v. Ortega*, 471 F.2d 1350 (2d Cir.1972), *cert. denied* 411 U.S. 948, 93 S.Ct. 1924, 1925, 36 L.Ed.2d 409 (1973). See also *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

No contraband was found in defendant's car. Instead, only valid United States currency, which is not statutory contraband under either 21 U.S.C. Section 881 or 49 U.S.C. Section 781, was found. This fact is immaterial to the court's determination that a permissible search occurred, however. The crucial issue is whether probable cause existed for the agents to believe that defendant's car contained contraband. Under the totality of the circumstances, cf. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), this court concludes that such probable cause was present.

■ Where, as here, the sole basis for a law enforcement officer's alleged probable cause lies in an informant's tip, the assertion of probable cause must of course be viewed with some circumspection, and careful consideration given to the informant's reliability and credibility. See *Aguilar v. Texas*, 378 U.S. 108, 112–115, 84 S.Ct. 1509, 1512–1514, 12 L.Ed.2d 723 (1964). The law in the Second Circuit is well established, however, that when the informant, as Mr. Reyes was, was in fact a participant in the very crime at issue, he may be assumed reliable and there is no need to show a past history of reliability. *United States v. Jackson*, 560 F.2d 112, 121 (2d Cir.1977), *cert. denied* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301. Moreover, the fact that Vidal responded to the beeper signal, showed up on schedule according to Reyes' prediction, fitted the description that Reyes had given, and threw a paper to the ground on being approached by the agent, supplies supplemental proof of this informant's reliability. Clearly then, there was probable cause for Vidal's arrest, and thus the items seized from Vidal's person, the beeper and the car keys, were constitutionally seized pursuant to a valid arrest.

It is a short leap to find probable cause to believe that Vidal's car contained contraband. A finding of such probable cause derives both from Reyes' statements about his relationship with Vidal, and describing Vidal's car and its function in the drug conspiracy, and from the evidence that was found on Vidal when he was arrested. If there is any doubt that probable cause to arrest Vidal on the basis of Reyes' tip would also furnish probable cause to believe that Vidal's car was somehow involved in drug trafficking, the items found on defendant upon arrest could only cor-

roborate Reyes' charge and must dispel any remaining wariness about whether probable cause existed to believe that Vidal's car might contain contraband. Vidal had over a thousand dollars in cash on his person at the time he was arrested. He was also carrying a beeper, a typical form of communication among narcotics dealers and the means by which Reyes had allegedly made contact a short time earlier.

These facts were enough to supply legally adequate probable cause to believe that defendant's car was subject to statutory forfeiture for its part in narcotics transactions, and that it contained contraband. Accordingly, the warrantless search of Vidal's parked car was permissible under *United States v. Capra*, 501 F.2d 267, 280 (2d Cir.1974).

Because defendant has failed to show that his constitutional rights were violated by the warrantless search of his car, his motion to suppress the evidence thereby obtained is denied.